IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROGER G. MORELAND,                              CV 07-1581-MA

            Plaintiff,                          OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

            Defendant.

SARA GABIN
4500 S.W. Kruse Way, Suite 100
Lake Oswego, OR 97035
(503) 620-3171

            Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158

1  - OPINION AND ORDER

NANCY A. MISHALANIE
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-3619

      Attorneys for Defendant

MARSH, Judge.

     Plaintiff Roger W. Moreland seeks judicial review of the final decision of the Commissioner denying his June 29, 2004, application for disability insurance benefits and supplemental security income benefits (benefits) under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f.[1]

     Plaintiff alleges he has been disabled since September 1, 2003, because of degenerative lumbar disc disease, bipolar disorder, hiatal hernia, hypertension, sleep apnea, hepatitis, blurry vison, depression, irritable bowel syndrome, bulging disc on back, stenosis, enlarged kidney, and possible kidney stone. Plaintiff's disability claim was denied initially and on reconsideration.  The Administrative Law Judge (ALJ) held a hearing on November 6, 2006, at which plaintiff and a vocational expert testified.  The ALJ issued a decision on June 29, 2007, that plaintiff was not disabled.  On September 10, 2007, the Appeals Council denied plaintiff's request for further review.

_____

   [1] Plaintiff previously obtained disability benefits for a closed period from April 2000 until February 2001, arising from a hernia.  That period of disability is not at issue here.

2 - OPINION AND ORDER

The ALJ's June 29, 2007, decision, therefore, became the final decision of the Commissioner for purposes of judicial review.

Plaintiff contends the ALJ erred in (1) failing to give clear and convincing reasons for rejecting plaintiff's testimony, (2) failing to give controlling weight to the opinions of plaintiff's treating doctors, (3) failing to properly evaluate the severity of plaintiff's impairments, including his obesity, either alone or in combination, and (4) failing to provide the Vocational Expert (VE) with an accurate hypothetical.

Plaintiff seeks an Order from this court reversing the Commissioner's decision and remanding the case for further development of the record. For the following reasons, the court **REVERSES** the final decision of the Commissioner and **REMANDS** this case for further proceedings.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. <u>Bowen v. Yuckert</u>, 482 U.S.137, 140 (1987). See also 20 C.F.R. § 404.1520. Plaintiff bears the burden of proof at Steps One through Four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability.

At Step Two, the ALJ found plaintiff suffers from lumbar degenerative disc disease with radiculopathy, hypertension, and bipolar disorder, which are severe impairments under 20 C.F.R. §§404.1520(c) and 416.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found these impairments do not meet or equal a listed impairment. The ALJ found plaintiff has the residual functional capacity to lift, push, and pull 10 lbs frequently and 20 lbs occasionally, walk and stand for six hours in an eight hour day, sit, stoop, and bend occasionally, with slight to moderate pain. Plaintiff would need a bathroom break frequently. The ALJ found plaintiff had slight limitations in attention, concentration, understanding, and memory.

At Step Four, the ALJ found plaintiff is unable to perform his past relevant work as a karaoke operator, welder, forklift driver, telemarketer, or construction laborer.

At Step Five, the ALJ found plaintiff is able to perform a full range of light exertion work, including cashier, fast food restaurant worker, and housekeeper.

Consistent with the above findings, the ALJ found plaintiff was not under a disability and denied his claim for benefits.

## ISSUES ON REVIEW

Plaintiff seeks an Order reversing the Commissioner's final decision and remanding the case for further development of the record because the ALJ failed (1) to give clear and convincing reasons for rejecting plaintiff's testimony, (2) to give clear and convincing reasons for rejecting the opinion of treating physicians, (3) to assess adequately the severity of plaintiff's impairments, (4) to assess adequately whether plaintiff's impairments, when considered in combination, met a listed impairment, and (5) to describe accurately plaintiff's residual functional capacity to the Vocational Expert (VE).

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere

5 - OPINION AND ORDER

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## RELEVANT RECORD

### Plaintiff's Evidence.

The following evidence is drawn from plaintiff's testimony, as well as his work history and earnings history reports.

Plaintiff was 45 years old on the date of the Commissioner's final decision denying his claim for benefits.  He is a high school graduate with approximately one year of college.  He has had some vocational training as a welder.

Plaintiff last worked from January 2000 to June 2005 as a karaoke disc jockey.  Before that, from about 1991 to 1999, he worked as a welder, general laborer, and forklift operator, doing construction related activities.

Plaintiff is 5'11" tall and weighs 300 lbs.  He tries to take walks occasionally.  His main recreational activity involves playing video games with his son.

He states he is unable to work now because of a dull pain in his back and front, and irritable bowel problems.  The pain is exacerbated by any increase in physical activity.  Elevating his feet and taking medications helps to relieve the pain.

Plaintiff lives with his wife and 8-year old son in a rented apartment.  He prepares meals twice a day, washes dishes once a day, does laundry and housekeeping once or twice a week depending on the particular task, and goes grocery shopping twice a month.

Otherwise, he spends his days watching television, watching over his son, reading for short periods, and visiting with friends or relatives.  He sleeps up to six hours daily if he's "lucky."

Plaintiff can sit or stand for about 25-30 minutes at a time and walk one-two blocks.  He has no difficulty reaching to the side or overhead and is able to pick up items such as pens from the table.  He is able to bathe and dress himself "with difficulty."  Because of his bowel condition, plaintiff usually must go to the bathroom up to seven times a day unless he has constipation, when he will not go for two-three days.  At least once or twice a month plaintiff is in such pain that he cannot move without resting.  The pain is alleviated somewhat if he stays off his feet.  Plaintiff will lay down up to twice a day for half-an-hour or an hour depending on his discomfort.

Plaintiff takes Remeron to treat his bipolar disorder.  His concentration is not as good as he would like.

**Medical Evidence.**

**Treatment - Oregon Health Sciences University.**

Since September 2001, Plaintiff's relevant medical treatment has been provided by the Oregon Health Sciences University Department of Internal Medicine.  At that time, plaintiff was found to have several "active issues":  Poorly controlled hypertension (140/98); obesity; gastroesophageal reflux disease;

ongoing fatigue; decreased visual acuity; and possible diabetes. He was referred to the OHSU Mental Health Clinic for treatment of bipolar disorder.

In October 2001, plaintiff was treated after passing kidney stones caused by hyperparathyroidism (secretion of excess hormones) and nephroliathisis (calcium in the kidney). His hypertension was under control.

In December 2001, plaintiff underwent a Nissen Procedure to treat his gastroesophageal reflux disease.

In April 2002, a full physical revealed a benign tumor in plaintiff's parathyroid gland, which was successfully removed a month later.

In November 2002 and January 2003, plaintiff was treated for hypertension, as well as symptoms of mania, depression, and anxiety. He also complained of changes in his vision.

In March 2003, a kidney stone was found in the right kidney but there was no evidence of renal artery stenosis (narrowing of the renal artery, possibly leading to hypertension).

In December 2003, plaintiff complained of irritability, mood swings, and pressured speech. There was concern that his level of functioning was impaired because of his psychiatric disorder and he was prescribed Zoloft and Depakote. As noted, he had previously been referred to the OHSU Mental Health Clinic but did

not benefit from "outpatient psychiatry." Plaintiff also complained of low back pain related to his job as a Karaoke disc jockey, which required him to lift heavy musical equipment frequently. Plaintiff also complained of mild abdominal pain as well as occasional pain from an incision related to his earlier surgery. He denied any bowel or bladder incontinence although he has a history of irritable bowel syndrome.

A week later, plaintiff stated the Depakote was helping his insomnia and anxiety and his depression was improved. He continued to complain of low back pain and was prescribed Vicodin. His blood pressure remained elevated.

In February 2004, plaintiff's anxiety was under control but he remained depressed and his blood pressure was still elevated. His low back pain was "significantly resolved."

In April 2004, plaintiff's bipolar disorder was well-controlled and stabilized by medication. His symptoms of low back pain appeared to be consistent with lumbosacral strain and he was referred to physical therapy. His hypertension was well-controlled by medication. His irritable bowel syndrome was an ongoing issue but he had no bladder or bowel incontinence.

Four days later, plaintiff came to the Emergency Room complaining of back pain and pain in the shoulders blades, mostly on the right. He was prescribed pain medication and physical

10- OPINION AND ORDER

therapy.  His bipolar disorder remained under control.

In May 2004, plaintiff's "pretty severe" hypertension was not adequately controlled, and he continued to complain of persistent back pain.  His bipolar symptoms were under control.

An MRI of his lumbar spine revealed mild disc bulging at L1-L2 and L2-L3 resulting in a mild central canal stenosis, and a mild disc protrusion at L4-L5 resulting in a severe central canal and left lateral recess stenosis.

In June 2004, plaintiff had hypokalemia (low potassium levels with hypertension), poorly controlled hypertension, and back pain.  He was referred to the hypertension/renal clinic for further evaluation.

In late June 2004, plaintiff's hypertension was better controlled and his bipolar disorder was stable.  He continued to have back pain and he was again referred to physical therapy.  He was having multiple periods of severe constipation related to irritable bowel syndrome.  Plaintiff was glucose intolerant and it was thought he was likely borderline diabetic.

In July 2004, plaintiff's hypertension was moderately controlled.  He remained glucose intolerant with a suspected diagnosis of Type II diabetes.  His back pain was thought to be mechanical in origin.

In September 2004, plaintiff was treated for a severe episode of low back pain with incontinence.  Plaintiff had

difficulty controlling his hypertension.  The cause of
plaintiff's hypertension was suspected to be hyperaldosteronism
(fluid retention usually caused by a tumor or disease).

In December 2004, the OHSU Neurosurgery Clinic recommended
and performed an L4-5 laminectomy, diskectomy, and foraminotomy
to relieve severe spinal stenosis that caused plaintiff to suffer
low back pain and pain in both of his legs.  The procedure
resulted in improvement in his pain level.  Plaintiff's
hypertension was doing well, and his depression and bipolar
disorder were well-controlled.

In April 2005, plaintiff again complained of chronic low
back pain, but his mood was stable.

From April 2005- May 2006, treating physician Hogan Shy,
M.D., wrote four short notes regarding plaintiff's ability to
work.  In April and May 2005, he opined that plaintiff was unable
to work for a year because of low back pain and mental disability
and he should avoid heavy lifting.  In March 2006, he restricted
plaintiff to lifting no more than 20 lbs or doing repetitive
movements for more than 30 minutes at a time.  In May 2006, he
repeated the same restrictions and stated plaintiff was presently
unable to return to work, but would be able to return to work
when a medical evaluation was completed.

In May 2006, plaintiff's blood pressure was high and was not
adequately controlled by medications.  Shortly thereafter,

plaintiff was diagnosed with Type II Diabetes to be controlled by insulin and Metformin.

In September 2006, plaintiff's hypertension was under better control.

In October 2006, plaintiff complained of fatigue, diarrhea, back pain, and malaise.  Plaintiff's hypertension had improved since he was prescribed new medications.

That month, internist William Ward, M.D., one of plaintiff's treating physicians, stated plaintiff could perform sedentary work involving any lifting, standing or sitting for no longer than 10 minutes at a time, and allowing him to take a 10 minute break every hour.  He opined plaintiff would miss at least one work day each month because of high blood pressure, chest pain, diabetes, and poorly controlled bipolar disorder.

In June 2007, Dr. Ward noted plaintiff's Type-II Diabetes was poorly controlled and he would require more frequent doctor visits to adjust his medications and monitor any improvement.

**Mental Status Evaluation**.

In August 2004, psychologist Maribeth Kallemeyn, Ph.D., reviewed plaintiff's medical records, interviewed him, and evaluated his depression and bipolar disorder on behalf of the Commissioner.  Dr. Kallemeyn concluded plaintiff met the psychodiagnostic criteria for bipolar II disorder.  She gave a

13- OPINION AND ORDER

GAF score of 60 - moderate difficulty in social, occupational, or school functioning. He "had reduced concentration," possibly because of the side effects of medication and he performed "well below average on a test of attention/ concentration." He exhibited "some difficulty with mental tracking tasks." Plaintiff, however, performed well on a memory screening test. Dr. Kallemeyn opined plaintiff would not have difficulty interacting socially in a work setting, but he would do "best" in a job involving "simple instructions and tasks, with some provision for repetition of instructions."

**Residual Physical Functional Capacity Consultation.**

In September 2004, Martin Kehrli, M.D., reviewed plaintiff's medical records and concluded plaintiff retained the residual functional capacity to frequently lift 10 lbs and occasionally lift 20 lbs, stand, walk, and sit, each for a total of six hours in a normal workday, push and pull without limit, frequently climb stairs, balance, kneel, and crouch, and occasionally climb ladder, ropes, and scaffolds, stoop, and crawl. With those limitations, Dr. Kehrli opined plaintiff was able to perform light work with occasional postural limitations. Sharon Eder, M.D., concurred in this opinion.

**Residual Mental Functional Capacity Consultation.**

In September 2004, psychologist Peter LeBray, Ph.D., reviewed plaintiff's medical records relating to his mental

14- OPINION AND ORDER

capacity.  He agreed with the diagnosis of Bipolar II Disorder,
and concluded plaintiff has moderate limitations in his ability
to understand and remember detailed instructions and carry them
out, mild restrictions as to daily living activities and
maintaining social functioning, and moderate difficulties in
maintain concentration, persistence, or pace.  Psychologist Paul
Rethinger, Ph.D., agreed with this evaluation.

**Vocational Expert Testimony.**

Vocational expert (VE) George Meyers testified at the
hearing that plaintiff's past relevant work included medium
skilled work as a karaoke operator or disc jockey, medium semi-
skilled work as a welder and forklift driver, sedentary semi-
skilled worker as a telemarketer, heavy unskilled work as a
construction laborer.

The ALJ posed hypotheticals to the VE based on plaintiff's
educational level, work history, and exertional and nonexertional
limitations, that would involve the ability to perform light
work.  The limitations included lifting, pushing, and pulling 20
lbs occasionally and 10 lbs frequently, walking, standing,
bending, and stooping occasionally, all with slight to moderate
pain levels, and performing simple, routine, and repetitive tasks
with slight deficits in attention, concentration, understanding
and memory.  The ALJ also added that a bathroom should be readily
available.  The VE opined plaintiff could not perform any of

his past relevant work, including his job as a karaoke operator,
because although that job is considered light work, plaintiff
performed it a medium exertion level.  He could perform light
work, however, as a cashier, housekeeper, and fast food worker.

**ANALYSIS**

1.    **Rejection of Plaintiff's Testimony**.

Plaintiff contends the ALJ failed to give clear and
convincing reasons for not crediting his testimony regarding the
severity of his mental and physical impairments.  I agree.

A claimant who alleges disability based on subjective
symptoms "must produce objective medical evidence of an
underlying impairment 'which could reasonably be expected to
produce the pain or other symptoms alleged. . . .'" Bunnell v.
Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C.
§ 423(d)(5)(A) (1988)).  See also Cotton v. Bowen, 799 F.2d 1403,
1407-08 (9th Cir. 1986).  The claimant need not produce objective
medical evidence of the symptoms or their severity.  Smolen v.
Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying
impairments could cause the pain complained of and there is not
any affirmative evidence to suggest the claimant is malingering,
the ALJ is required to give clear and convincing reasons for
rejecting plaintiff's testimony regarding the severity of his
symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

See also Smolen, 80 F.3d at 1283.  To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

Here, there is no evidence that plaintiff is a malingerer. The ALJ, however, found plaintiff's statements regarding the intensity, persistence, and limiting effect of his impairments were "not entirely credible."  In reaching that conclusion, the ALJ found, inter alia, plaintiff's relatively extensive and regular activities of daily living, including preparing meals, washing dishes, making beds, visiting with friends every day, cleaning the bathroom twice a week, sweeping, vacuuming, and doing the laundry once a week, and grocery shopping every other week, were consistent with an ability to perform light work.  The ALJ also found plaintiff's claim that he could not even perform sedentary work despite his daily living activities, undercut plaintiff's credibility.

On this record, I find the ALJ's stated reasons for discrediting plaintiff are insufficient. "[T]he mere fact that a

plaintiff has carried on certain activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability.  One does not need to be utterly incapacitated to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).  Here, as in Vertigan, there is no evidence plaintiff's daily activities took up the whole day, or anywhere close to it.

I also note the ALJ states "there are no objective medical findings with respect to most of plaintiff's alleged impairments," including plaintiff's "alleged back pain, hypertension, . . . irritable bowel syndrome, and bipolar disorder."  This statement is not supported by the record.  The December 2004 postoperative report following plaintiff's L4-5 laminectomy, diskectomy, and foraminotomy states plaintiff had "a severe spinal stenosis at L4-5 and a large paracentral left disk herniation."  Moreover, the medical record is replete with references to plaintiff's often uncontrolled hypertension, occasionally uncontrolled bipolar symptoms, and bowel difficulties.  On this record, I conclude the ALJ did not give clear and convincing reasons for failing to credit plaintiff's testimony regarding his physical and mental limitations.

2.  **Rejection of Treating Physician Opinions.**

Plaintiff alleges the ALJ erred in rejecting the opinions of treating physicians Hogan Shy, M.D., and William Ward, M.D., that

plaintiff was either unable to work in 2005 and 2006 (Shy), or
was limited to sedentary work (Ward), and the opinion of
examining psychologist Maribeth Kallemeyn, Ph.D., in 2004, that
plaintiff suffered from Bipolar II Disorder and had a GAF of 60.

In <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998),
the Ninth Circuit laid out the weight to be given to the opinions
of treating doctors:

> The opinions of treating doctors should be
> given more weight than the opinions of
> doctors who do not treat the claimant. Where
> the treating doctor's opinion is not
> contradicted by another doctor, it may be
> rejected only for clear and convincing
> reasons supported by substantial evidence in
> the record. Even if the treating doctor's
> opinion is contradicted by another doctor,
> the ALJ may not reject this opinion without
> providing specific and legitimate reasons
> supported by substantial evidence in the
> record. This can be done by setting out a
> detailed and thorough summary of the facts
> and conflicting clinical evidence, stating
> his interpretation thereof, and making
> findings. The ALJ must do more than offer
> his conclusions. He must set forth his own
> interpretations and explain why they, rather
> than the doctors', are correct.

(Internal Citations Omitted). In turn, "the opinions of
examining physicians are afforded more weight than those of non-
examining physicians." <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th
Cir. 2007).

The record reflects the ALJ briefly referred to Dr. Shy's
March 2005 opinion that plaintiff was unable to work because of
severe low back pain from that date through at least January

19- OPINION AND ORDER

2006, but he ignored Dr. Shy's May 2006 opinion that plaintiff "is unable to work from now until further notice" and that he would be able to return to work only "when medical evaluation is completed."

On this record, I conclude the ALJ did not adequately consider Dr. Shy's opinions in his disability evaluation.

The ALJ rejected Dr. Ward's October 2006 finding regarding plaintiff's functional limitations and his opinion that plaintiff was able to perform sedentary work, albeit with substantial limitations, because the opinion was brief and was not accompanied by the clinical findings on which Dr. Ward based his assessment. The ALJ ignored Dr. Ward's June 2007 opinion that plaintiff's Type II Diabetes was poorly controlled.

On this record, I find the ALJ did not adequately consider Dr. Ward's opinions regarding plaintiff's ability to work. I note the ALJ appears to have given considerable weight to the opinions of consulting doctors who never examined plaintiff and who rendered nondisability opinions that were no more detailed than Dr. Ward's opinion.

The ALJ briefly discussed Dr. Kallemeyn's evaluation of plaintiff's bipolar disorder but incorrectly stated the GAF score of 60 assigned by Dr. Kallemeyn following her examination suggested plaintiff suffered from a "mild" impairment of occupational function. That score, however, suggests a

"moderate" impairment.

Accordingly, I conclude the ALJ failed to give clear and convincing reasons for not considering the opinions of Dr. Shy, Dr. Ward, and Dr. Kallemeyn, in making his decision that plaintiff was not disabled.

**3.    Inadequate Assessment of Plaintiff's Impairments, either alone, or in combination.**

Plaintiff contends the ALJ failed to consider each of plaintiff's impairments in combination in determining whether they met a listed impairment.  I agree.

> In evaluating a claimant with more than one impairment, the Commissioner must consider whether the combination of your impairments is medically equal to any listed impairment. 20 C.F.R. § 404.1526(a); see also Sprague v. Bowen, 812 F.2d 1226, 1231 (9th Cir.1987). The claimant's illnesses must be considered in combination and must not be fragmentized in evaluating their effects.  Beecher v. Heckler, 756 F.2d 693, 694-95 (9th Cir.1985) (quoting Dressel v. Califano, 558 F.2d 504, 508 (8th Cir.1977)). In determining whether the claimant's combination of impairments equals a particular listing, the Commissioner must consider whether his symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. 20 C.F.R. 404.1529(d)(3).

Lester v. Chater, 81 F.3d 821, 829 (9th Cir. 1995).

In addition to inadequately assessing plaintiff's physical and mental limitations, the ALJ erred in failing to consider adequately whether those limitations, in combination, met or equaled a listed impairment.

21- OPINION AND ORDER

**4.    <u>Inadequate Hypothetical to the VE</u>.**

The ALJ's hypothetical to the VE that included plaintiff's ability to perform light work was necessarily flawed because it depended on the ALJ's flawed evaluation of the medical evidence and plaintiff's testimony.

<u>CONCLUSION</u>

For all the reasons stated above, the court **REVERSES** the final decision of the Commissioner and **REMANDS** this case for further proceedings, during which plaintiff's testimony regarding the severity of his symptoms shall be credited as true and the opinions of his treating physicians shall be credited in determining whether plaintiff is disabled.

Section 406(b) of the Social Security Act "controls fees for representation [of Social Security claimants] in court." <u>Gisbrecht v. Barnhart</u>, 535 U.S. 789, 794 (2002)(citing 20 C.F.R. § 404.1728(a)).  Under 42 U.S.C. § 406(b), "a court may allow 'a reasonable [attorneys'] fee . . . not in excess of 25 percent of the . . . past-due benefits' awarded to the claimant." *Id.* at 795 (quoting 42 U.S.C. § 406(b)(1)(A)).  Because § 406(b) does not provide a time limit for filing applications for attorneys' fees and Federal Rule 54(d)(2)(B) is not practical in the context of Social Security sentence-four remands, Federal Rule of Civil Procedure 60(b)(6) governs.  <u>Massett v. Astrue</u>, 04-CV-1006 (Brown, J.)(issued June 30, 2008).  *See also* <u>McGraw v. Barnhart</u>,

450 F.3d 493, 505 (10th Cir. 2006).  To ensure that any future application for attorneys' fees under § 406(b) is filed "within a reasonable time" as required under Rule 60(b)(6), the Court orders as follows:  If the Commissioner finds Plaintiff is disabled on remand and awards Plaintiff past-due benefits and if, as a result, Plaintiff intends to submit such application for attorneys' fees under § 406(b), Plaintiff shall submit any such application within 60 days from the issuance of the Notice of Award by the Commissioner.

IT IS SO ORDERED.

DATED this  6 day of October, 2008.


     /s/  Malcolm F. Marsh
            MALCOLM F. MARSH
         United States District Judge


23- OPINION AND ORDER